UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

MYRON PRIEST,                                    )        Case No. 1:08CV2028
                                                 )
          Petitioner,                            )        JUDGE DAN AARON POLSTER
                                                 )
     v.                                          )        Magistrate Judge George J. Limbert
                                                 )
STUART HUDSON, Warden,                           )        **Interim Report and Recommendation**
Mansfield Corrections Institution,               )        **of Magistrate Judge**
                                                 )
          Respondent.                            )
                                                 )

        Petitioner Myron Priest ("Petitioner") has filed a petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that

occurred during his Cuyahoga County, Ohio Court of Common Pleas conviction for: six counts of

rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02, with firearm specifications pursuant

to O.R.C. §§ 2941.141 and 2941.145; two counts of aggravated robbery in violation of O.R.C. §

2911.01 with firearm specifications pursuant to O.R.C. §§ 2941.141 and 2941.145; one count of

felonious assault in violation of  O.R.C. § 2903.11 with firearm specifications pursuant to O.R.C.

§§ 2941.141 and 2941.145 and a sexual motivation specification pursuant to O.R.C. § 2941.147;

three counts of kidnapping with firearm specifications pursuant to O.R.C. §§ 2941.141 and 2941.145

and a sexual motivation specification pursuant to O.R.C. § 2941.147; and one count of having a

weapon under a disability in violation of O.R.C. § 2923.13. ECF Dkt. #1; *see also* ECF Dkt. #5, Ex.

1, 3, 5. On February 18, 2009, Respondent Stuart Hudson filed a Return of Writ. ECF Dkt. #5. On

May 4, 2009, Petitioner filed a traverse. ECF Dkt. #10.

        The case was referred to the undersigned for a Report and Recommendation. For the

following reasons, the undersigned RECOMMENDS that the Court DISMISS Grounds One, Three,

and Four of the instant petition with prejudice. The undersigned further RECOMMENDS that the

Court order the State to produce Officer Bechtel's police report in order to adjudicate the merits of

Ground Two:

## I.    SYNOPSIS OF THE FACTS

The Eighth District Court of Appeals of Ohio set forth the facts of this case on direct appeal.

These binding factual findings "shall be presumed to be correct", and Petitioner has "the burden of

rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1);

*Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set

forth by the Eighth District Court of Appeals, the facts are:

> {¶ 2} On June 7, 2006, defendant was indicted pursuant to a seventeen count indictment in connection with alleged sexual assaults on three women on April 10, 2006. Counts One through Six charged defendant with two counts of rape with sexually violent predator specifications as to each of the three women, A.C., M.G., and B.S. Counts Seven through Twelve charged defendant with two counts of aggravated robbery as to each woman. Count Thirteen charged defendant with one count of felonious assault as to A.C. Counts Fourteen through Sixteen charged defendant with one count of kidnapping as to each woman. Counts Thirteen through Sixteen also set forth sexually violent predator specifications and sexual motivation specifications. Count Seventeen charged him with having a weapon while under disability.

> {¶ 3} Defendant pled not guilty and also moved to suppress statements which he made at the time of booking. Following a hearing, the trial court denied the motion to suppress, and the matter proceeded to a jury trial on September 29, 2006.

> {¶ 4} The state's evidence demonstrated that A.C. dated Deontay Schaefer, M.G. dated Russell Flowers and B.S. dated Levon Edgeston. The women frequently drove to East Cleveland to visit the men. On April 10, 2006, A.C. drove the women to Deontay Schaefer's home in East Cleveland. Flowers and Edgeston were also there. As the women sat in their car, Brandon Wheat, whom the women knew, approached with defendant.

> {¶ 5} Defendant asked the women for a ride to the store. A .C. indicated that she would take him but she needed gas money. The women left Schaefer's home at approximately 9:30 p.m. Defendant asked to be taken to a home on Shaw Avenue in East Cleveland. He exited the car, and knocked on the door but no one answered. He then returned to the car and produced a silver handgun and told A.C. to pull into a nearby driveway and to give him the car keys. A.C. refused, and defendant pulled B.S. out of the car and threatened to shoot B.S. A.C. then gave the keys to defendant.

> {¶ 6} Defendant forced the women to go to the back of the house. He instructed them to be quiet and struck them in the head with the weapon if they spoke. He showed them that the weapon was loaded and instructed the women to remove their pants and bend over. He raped M.G, who was then pregnant, A.C., and B.S. He also made the women lick his penis. During the assaults, defendant struck A.C. in the head with the gun.

> {¶ 7} When they returned to the car, defendant took M.G.'s cell phone and removed part of the CD player from the car. He then took B.S. to the side of the house and raped her vaginally and anally. When they returned to the car, defendant indicated that he wanted the car, and A.C. sprayed him in the eyes with perfume and dumped the

-2-

bottle on his head. As A.C. struggled with defendant, he pushed her to the ground and hit her, but then ran off. A.C. ripped a section of defendant's jacket off as he fled and a cell phone fell from the pocket. The women called police and were instructed to wait at the firehouse across the street.

{¶ 8} Defendant was subsequently arrested and denied any involvement with the offenses. Vaginal and rectal swabs taken from A.C. were positive for semen, and her underwear also tested positive for semen. DNA analysis of the swabs contained a mixture of A.C.'s and M.G.'s DNA, indicating that they had sex with the same individual in a short period of time. Vaginal swabs from B.S. contained a sperm profile consistent with defendant and the expected frequency of such profile is 1: 120, 600, 000, 000, 000, 000, 000.

{¶ 9} The trial court granted a judgment of acquittal as to Counts Eleven and Twelve, charges of aggravated robbery. The matter was then submitted to the jury and defendant was convicted of the rape counts and the firearm specifications, Count Seven and Nine and their specifications and Counts Thirteen through Sixteen and their specifications. In addition, the trial court convicted defendant of having a weapon while under disability.

{¶ 10} On November 20, 2006, the trial court held a hearing on the sexually violent predator specifications and determined that the specifications were not established. The court then conducted a sexual predator hearing and determined that defendant is a sexual predator. He was later sentenced to a total of thirty-three years of imprisonment. Defendant now appeals and assigns seven errors for our review.

ECF Dkt. #5, Ex. 8; *State v. Priest*, Case No. 89178, 2007 WL 3293403 at *1 (Ohio App. 8 Dist., Nov. 8, 2007), unreported.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court

On June 7, 2006, the Cuyahoga County, Ohio prosecuting attorney filed an indictment, charging Petitioner with seventeen counts, including six counts of rape in violation of O.R.C. §§ 2907.02, with firearm specifications pursuant to O.R.C. §§ 2941.141 and 2941.145 with sexually violent predator specifications pursuant to O.R.C. § 2971.01 (Counts 1-6); six counts of aggravated robbery in violation of O.R.C. § 2911.01 with firearm specifications pursuant to O.R.C. §§ 2941.141 and 2941.145 (Counts 7-12); one count of felonious assault in violation of 2903.11 with firearm specifications pursuant to O.R.C. §§ 2941.141 and 2941.145 and a sexual motivation specification pursuant to O.R.C. § 2941.147 and a sexually violent predator specification pursuant to O.R.C. 2971.01 (Count 13); three counts of kidnapping with firearm specifications pursuant to O.R.C. §§ 2941.141 and 2941.145 and a sexual motivation specification pursuant to O.R.C. § 2941.147 and

a sexually violent predator specification pursuant to O.R.C. § 2971.01 (Counts 14-16); and one count of having a weapon under a disability in violation of O.R.C. § 2923.13(Count 17).  ECF Dkt. #5, Ex. 1.

On September 29, 2006, the case proceeded to a jury trial.  ECF Dkt. #5, Ex. 3, 13 (trial transcript, hereinafter "Tr.").  On October 6, 2006, the trial judge dismissed Counts 11 and 12 pursuant to Ohio Rule of Criminal Procedure 29.  ECF Dkt. #5, Ex. 2.  On October 10, 2006, the jury convicted Petitioner of: (Counts 1-6) six counts of rape in violation of O.R.C. § 2907.02, with firearm specifications pursuant to O.R.C. §§ 2941.141 and 2941.145; (Counts 7, 9) two counts of aggravated robbery in violation of O.R.C. § 2911.01 with firearm specifications pursuant to O.R.C. §§ 2941.141 and 2941.145; (Count 13) one count of felonious assault in violation of 2903.11 with firearm specifications pursuant to O.R.C. §§ 2941.141 and 2941.145 and a sexual motivation specification pursuant to O.R.C. § 2941.147; (Counts 14-16) three counts of kidnapping with firearm specifications pursuant to O.R.C. §§ 2941.141 and 2941.145 and a sexual motivation specification pursuant to O.R.C. § 2941.147; and  (Count 17) one count of having a weapon under a disability in violation of O.R.C. § 2923.13.  Tr. at 883-91.  The jury acquitted him on Counts Eight and Ten, aggravated robbery.  *Id.*

The trial court later conducted a hearing to determine if Petitioner was a sexually violent predator as charged in Counts 1-6, and 13-16.  ECF Dkt. #5, Ex. 5.  The court determined that he was not a sexually violent predator.  *Id.*

On November 21, 2006, the court sentenced Petitioner to a term of 33 years of imprisonment. ECF Dkt. #5, Ex. 5.  In so doing, the court merged Petitioner's firearm specifications to a three year term, which was to run consecutive with sentences of ten years for counts one and two, ten years for counts three and four and ten years for counts five and six, which were to run consecutive to each other.  *Id.*  The trial court also sentenced Petitioner to ten years for counts seven and nine, eight years on count thirteen and ten years on counts fourteen, fifteen and sixteen, to run concurrent with all counts.  *Id.*

**B.**     **Direct Appeal**

On March 13, 2007, Petitioner filed a brief in support of his direct appeal, raising the

-4-

following assignments of error:

 I. THE TRIAL COURT LACKED JURISDICTION TO TRY THE APPELLANT WITHOUT A JURY ON THE WEAPON WHILE UNDER DISABILITY CHARGE BECAUSE NO JURY WAIVER WAS SIGNED BY THE APPELLANT.

 II. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS HIS ORAL INCULPATORY STATEMENT IN VIOLATION OF HIS RIGHTS AGAINST SELF-INCRIMINATION.

 III. THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION WHEN IT FAILED TO CONDUCT AN IN CAMERA INSPECTION OF THE OFFICER'S OBSERVATIONS.

 IV. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENT (SIC) TO THE UNITED STATES CONSTITUTION WHEN HIS ATTORNEY FAILED TO OBJECT TO UNFAIRLY PREJUDICIAL EVIDENCE AND FAILED TO OBJECT TO IMPROPER VICTIM IMPACT TESTIMONY.

 V. THE APPELLANT'S CONVICTIONS FOR RAPE, AGGRAVATED ROBBERY, FELONIOUS ASSAULT AND KIDNAPPING WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

 VI. THE EVIDENCE IS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE "BY CLEAR AND CONVINCING EVIDENCE" THAT APPELLANT "IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES."

 VII. THE TRIAL COURT FAILED TO MAKE A FINDING THAT THE APPELLANT'S SENTENCE IS CONSISTENT WITH SIMILARLY SITUATED OFFENDERS.

ECF Dkt. #5, Ex. 6.

  On November 19, 2007, the Ohio Court of Appeals for the Eighth District affirmed the trial court's judgment in part and reversed it in part. ECF Dkt. #5, Ex. 8. The appellate court remanded for reconsideration of the charge of having a weapon under a disability. *Id.* On remand, the trial court dismissed Count 17 on recommendation of the prosecuting attorney. ECF DKt. #5, Ex. 9.

  **C.** **Supreme Court of Ohio**

  On December 24, 2007, Petitioner, pro se, filed a notice and brief in support of jurisdiction in the Supreme Court of Ohio, raising the following propositions of law:

-5-

I.      The trial court erred when it overruled appellant's motion to suppress his oral inculpatory statement in violation of his Fifth and Fourteenth Amendment rights under the United States Constitution.

II.     The trial court erred to appellant's prejudice in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution when it failed to conduct an in camera inspection of the officer's observations.

III.    Appellant received ineffective Assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution when his attorney failed to object to unfairly prejudicial evidence and failed to object to improper victim impact testimony.

IV.     The court failed to make a finding that the appellants (sic) sentence is consistent with similarly situated offenders in violation of the Eighth and Fourteenth Amendment (sic) under the U.S. Constitution.

ECF Dkt. #5, Ex. 10.  On May 12, 2008, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question.  ECF Dkt. #5, Ex. 12.

### D.      28 U.S.C. § 2254 Petition

On June 6, 2008, Petitioner filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities).  Petitioner has raised the following grounds for relief:

**GROUND ONE:**      Motion to Suppress an oral statement.

**Supporting Facts:**     Trial court erred when it overruled appellant's motion to suppress his oral inculpatory statement in violation of his fifth and fourteenth amendment rights under the United States Constitution.

**GROUND TWO:**      Failure to conduct an in camera inspection.

**Supporting Facts:**     The trial court erred to appellant's prejudice in violation of the Sixth and Fourteenth Amendment (sic) to the United States (sic) and Article I Section 10 and 16 of the Ohio Constitution when it failed to conduct an in camera inspection of the officer's observations.

**GROUND THREE:**  Ineffective Assistance of Counsel.

**Supporting Facts:**     Appellant received ineffective assistance of counsel guaranteed by Article I. Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United Sates Constitution when his attorney

-6-

failed to object to unfairly prejudicial evidence and failed to object to improper victim impact testimony.

**GROUND FOUR:**  Sentence is Disproportionate.

**Supporting Facts:**  The court failed to make a finding that the appellants (sic) sentence is consistent with similarly situated offenders in violation of the Eighth and Fourteenth Amendment under the U.S. Constitution.

ECF Dkt. #1.  On February 18, 2009, Respondent Stuart Hudson filed a Return of Writ.  ECF Dkt. #5.  On May 5, 2009, Petitioner filed a traverse.  ECF Dkt. #8.

## III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not an issue in this case.  See ECF Dkt. ## 1, 5, 8.  Respondent contends, however, that Ground Four is otherwise procedurally-barred.  ECF Dkt. #5 at 16-18.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not

-7-

"fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v.  Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), *quoting Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) *cert. denied*, 509 U.S. 907 (1993)(quotation omitted).

Unless an exception applies, the Court must dismiss a petition for lack of exhaustion if it contains at least one issue that was not presented to the state courts so long as a remedy is still available for the petitioner to pursue in the state courts.  *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), overruled in part on other grounds, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.      Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).   In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman*, 501 U.S. at 730.  For purposes of

-8-

procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) *citing Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

> (1)  whether the petitioner failed to comply with an applicable state procedural rule;
>
> (2)  whether the state courts actually enforced the state procedural sanction;
>
> (3)  whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and
>
> (4)  if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id*. at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of

jurisdiction); Richey, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004). A state's res judicata rule barring post-conviction claims which could have been raised on appeal is an adequate and independent ground for *Maupin* purposes. *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), cert. denied, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

-10-

IV.    **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

-11-

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.    Decisions of lower federal courts may not be considered.

B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.    The state court decision may be overturned only if:

    1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

    2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

    3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

    4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules

-12-

of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).   The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).   The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).   Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.    ANALYSIS

### A.    Ground One: Motion to Suppress Oral Statement

Petitioner first contends that the trial court erred in overruling his motion to suppress an oral inculpatory statement that he had made prior to being advised of his constitutional rights.  ECF Dkt. #1 at 6, Attach. 1 at 9.   The Eighth District Court of Appeals was the last state court to review Petitioner's claims on the merits, as the Ohio Supreme Court did not exercise jurisdiction over Petitioner's appeal.  Therefore, this Court must determine if the Ohio Court of Appeals' decision is contrary to or an unreasonable application of federal law.   28 U.S.C. § 2254(d).

First, the Eighth District Court of Appeals set forth the applicable law governing custodial interrogations, and stated that:

> {¶ 25} We further note that in *Miranda v. Arizona* (1966), 384 U.S. 436, 478-479, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court held that a defendant who is subjected

to custodial interrogation must be advised of his or her constitutional rights and make a knowing and intelligent waiver of those rights before statements obtained during the interrogation will be admissible. The Court cautioned, however, that *Miranda* does not affect the admissibility of "volunteered statements of any kind." 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. *See, also*, *State v. McGuire* (1997), 80 Ohio St.3d 390, 401, 1997-Ohio-335, 686 N.E.2d 1112 (Statements given before questioning has begun must be considered voluntarily given and not made during a "custodial interrogation."); *State v. Jones*, 90 Ohio St.3d 403, 2000-Ohio-187.

{¶ 26} In *State v. Jones*, 90 Ohio St.3d 403, 2000- Ohio-187,739 N.E.2d 300, the defendant was arrested and booked at the police station. At this time, he was shown a copy of the indictment and told he was under arrest for the murder of the victim and burglary and robbery in connection with the theft of her necklace. The booking officer showed defendant a photo of the necklace and defendant stated that he had never seen it before in his life. The officer told defendant that the necklace was in the trunk of his car and defendant then denied it had been in his car. In determining that the trial court properly denied defendant's motion to suppress these statements, the Supreme Court held that the statements were not the result of a police interrogation and not elicited in violation of his constitutional rights, but were voluntary.

{¶ 27} Similarly, in *State v. Andrews*, Allen App. No. 1-05-70, 2006-Ohio-3764, the defendant demanded to know what he was being interviewed about upon his arrival at the police department. The officers explained that a private citizen had reported that defendant had robbed him. Defendant then indicated that he did not rob people, he robbed businesses. Miranda warnings were given immediately after the statement was made and prior to any questioning. In affirming the denial of a motion to suppress, the court noted that the police had not asked defendant any questions but had simply given the reason for the interview in response to defendant's question. The court then held that the statement was made prior to the start of any "interrogation" and was voluntarily given.

ECF Dkt. #5, Ex. 8; *Priest*, 2007 WL 3293403 at*2-*3.  Then, the Eighth District Court of Appeals reviewed the relevant facts surrounding the claim:

{¶ 28} In this matter, East Cleveland police detective Henry McCurdy testified that he did not discuss the case with defendant and defendant made no statement prior to signing a Miranda waiver. In opposition, defendant stated that, during fingerprinting, and prior to his signing of the *Mirand* a [sic] waiver, he asked Det. McCurdy why he was being arrested and then made a statement to McCurdy. The trial court denied the motion following the hearing.

{¶ 29} In accordance with all of the foregoing, we conclude that insofar as the trial court may have determined that all discussion occurred subsequent to defendant's waiver of his rights, we would conclude that such determination is supported by competent, credible evidence. Alternatively, insofar as the trial court may have credited defendant's version of events, i.e., that during fingerprinting, he asked Det. McCurdy why he had been arrested, then told McCurdy, "I didn't rape and rob nobody," such statement was not made in response to police questioning, and was not compelled by police in any manner.

-14-

{¶ 30} The second assignment of error is without merit.

ECF Dkt. #5, Ex. 8; *Priest*, 2007 WL 3293403 at*4.  Based on the relevant facts surrounding the interrogation, the Eighth District Court of Appeals found that the statements made by Petitioner were not made in a custodial context.  *Id.*  The court rationalized that Petitioner's statement was not made in response to police questioning or compelled by police in any manner.  *Id.*  Accordingly, the court determined that Petitioner's right against self-incrimination had not been violated. *Id.*

This Court must decide whether the Eighth District Court of Appeals' decision is contrary to or an unreasonable application of federal law.  28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the U.S. Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. at 412-13.  With this in mind, the undersigned recommends that the Court find that the decision of the Eighth District Court of Appeals was not contrary to *Miranda v. Arizona*. The Eighth District Court of Appeals set forth the correct legal standards with respect to custodial interrogations as found in *Miranda*.  Then, the court considered the relevant testimony and evidence and determined that the Petitioner was questioned by the police officers and as such, his right against self-incrimination was not violated.  This decision is consistent with cases decided by the U.S. Supreme Court regarding custodial interrogations.  For example, in *Pennsylvania v. Muniz*, 496 U.S. 582, 603-04 (1990), the Supreme Court held that a custodial interrogation had not occurred when a defendant made several incriminating statements after a police officer had instructed him on performing sobriety tests.  The Court stated that "Muniz's incriminating utterances during this phase of the videotaped proceedings were 'voluntary' ".  *Id.*  The Court explained that the police conducted limited inquiries attendant to police procedure, *i.e.*, ensuring that the defendant understood the sobriety test instructions.  *Id.* at 605.  Here, the police did not even go so far as to conduct an inquiry; they only arguably *responded* to Petitioner's inquiry.  Under both Petitioner's version of events and Detective McCurdy's version, the police did not even ask Petitioner a question.  *See* ECF Dkt. #5, Ex. 8; *Priest*, 2007 WL 3293403 at ¶28.  Even under Petitioner's version of events, the

police simply responded to Petitioner's question by informing why he had been arrested:

> Q [defense counsel]:
>
> And were you informed why you were there?
>
> A [Petitioner]:
>
> Yes. I was telling him that I don't have no idea why I got arrested and everything, and he told me what they had me in the police station for.
>
> Q: Were you asked to make a statement?
>
> A: He was just asking me, you know, telling me that I had been charged with all that rape and all that craziness.
>
> And I told him, I'm like, you know, "I didn't rape and rob nobody," and that's basically what I was telling him.

Tr. at 46; *see* ECF Dkt. #5, Ex. 8; *Priest*, 2007 WL 3293403 at ¶28. Therefore, the Eighth District Court of Appeals' decision was not "contrary to" clearly established federal law.

Next, this Court must consider whether the Eighth District Court of Appeals' application of the legal principles was "objectively unreasonable." *Williams*, 529 U.S. at 409. Here, the Eighth District Court of Appeals determined that Petitioner was not subjected to interrogation or compelled by police in any way. *See* ECF Dkt. #5, Ex. 8; *Priest*, Case No. 89178, 2007 WL 3293403 at ¶¶28-29. The facts support this conclusion, and Petitioner has not presented any evidence to establish that he was in fact questioned by police. Therefore, the Eighth District Court of Appeals' application of law was not objectively unreasonable.

Further, in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson*, 113 S.Ct. 1710 (1993). *Fry v. Pliler,* 127 S.Ct. 2321, 2328 (2007). Here, Petitioner cannot demonstrate a "substantial and injurious effect" because his statements were voluntarily made and because his statements were not inculpatory. "Voluntary and spontaneous comments by an accused, even after *Miranda* rights are asserted, are admissible evidence if the

comments were not made in response to government questioning." *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir.1991).   *U.S. v. Cole,* 315 F.3d 633, 637 (6th Cir. 2003) ("Because the record reflects that Cole's statements while being booked and later transported to jail were spontaneous and unprovoked by Officer Jones's initial question at the scene of the crime, the initial *Miranda* violation furnishes no basis to suppress the subsequent statements.").  As discussed above, under Petitioner's own account of the events, he voluntarily made the statements at issue.  Further, the statements at issue are not inculpatory because they are proclamations of innocence.  It is difficult to see how their exclusion at trial would have contributed to the likelihood of a different outcome.

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground One with prejudice.

**B.      Ground Two: Failure to Conduct an in camera Inspection**

Petitioner next contends that the trial court erred in failing to conduct an in camera inspection of Officer John Bechtel's police report as Ohio Rule of Criminal Procedure 16(B)(1)(g) required, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.  ECF Dkt. #1 at 8; Attach. 1 at 12.  Petitioner contends that during the cross examination of Officer Bechtel, defense counsel asked the office if he prepared a report reflective of his observations that evening, and after he responded 'yes' defense counsel moved for an in camera inspection of the report.  ECF Dkt. #1, Attach. 1 at 12.

Respondent first contends that this claim is not cognizable in a § 2254 petition because it is based upon an alleged misapplication of state law.  ECF Dkt. #5 at 9.  The Sixth Circuit has held that federal habeas review of a state trial court ruling based upon state evidentiary law is "extremely limited."  *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006).  "[E]rrors in application of state law, especially with regard to the admissibility of evidence, are *usually* not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983) (emphasis added).  However, a claim that an evidentiary error violated a Federal Constitutional right *is* cognizable in a federal habeas court. The Sixth Circuit held:

> Bey's second claim is that, even though the Ohio Supreme Court upheld the admission of the 'other acts' evidence as a matter of state evidentiary law, that particular evidence was so prejudicial that its admission nonetheless rendered his entire trial

-17-

> fundamentally unfair, **which denied him due process under the Fifth and Fourteenth Amendments. This is Bey's new construction of his proposed habeas issue and by framing it as a constitutional violation he has at least asserted a cognizable habeas claim** . . .

*Bey v. Bagley*, 500 F.3d 514, 519-520 (6th Cir. 2007) (emphasis added).  Likewise, the instant claim is cognizable because it asserts violations of the Sixth and Fourteenth Amendment.  Although Petitioner has not clearly articulated which constitutional rights have been violated, the undersigned believes that issue to be more appropriately addressed in the merits of the petition and not as a matter of cognizability.  This conclusion holds true, especially because it is difficult to ascertain what particular constitutional rights, if any, have been violated until after the Court has reviewed Officer Bechtel's report.  In sum, the undersigned recommends that the Court find Ground Two to be cognizable under the *Bey* standard.

A cognizable claim is not necessarily meritorious.  The Sixth Circuit has held that a state court error must be egregious to merit habeas relief: "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004).  The Sixth Circuit articulated the appropriate standard for making the foregoing determination:

> The Supreme Court looks to several factors in determining whether a defendant's due process rights require the admission of a particular item of evidence.  First, the Court considers the extent to which the proffered evidence is "critical" in the context of the case.  Second, the Court considers the extent to which the proffered evidence "tend[s] to exculpate" the accused.  Finally, the Court determines whether the proffered evidence bears "persuasive assurances of trustworthiness[.]"

*Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir. 1994) (internal citations omitted).  Lastly, "where the highest court of the State has not spoken, this Court is obligated to follow published intermediate state appellate court decisions, we are not bound by a decision of an intermediate state appellate court when we are convinced that the highest state court would decide differently."  *Olsen v. McFaul,* 843 F.2d 918, 929 (6th Cir. 1988).

Here, the pertinent analytical questions are (1) whether the trial court did in fact err and (2) whether the error was so fundamentally unfair as to deprive Petitioner of due process.  At trial,

-18-

defense counsel asked Officer Bechtel if he prepared a report relative to his observations that evening. Tr. at 304. Defense counsel then asked for a sidebar and moved for production of the report. *Id*. at 304- 307. The trial court denied the motion, reasoning that Officer Bechtel did not witness a crime, and the report was therefore not a witness statement. *Id*. at 305. The Eighth District Court of Appeals reviewed the trial court's decision and affirmed the trial court's ruling because:

> Those portions of police reports recording the officer's personal observations and recollections of the events are subject to scrutiny under Crim.R. 16(B)(1)(g); *State v. Jenkins* (1984), 15 Ohio St.3d 164, 473 N.E.2d 264. Those portions which recite matters beyond the witness' personal observations, such as notes regarding another witness' statement or the officer's investigative decisions, interpretations and interpolations, are privileged and excluded from discovery under Crim.R. 16(B)(2). *Id*. Reports or notes taken by a police officer during an interview with a victim or witness in a case are not considered a statement for the purposes of Crim.R. 16(B)(1)(g); *State v. Spraggins*, Cuyahoga App. No. 87256, 2006-Ohio-739[1].

*See* ECF Dkt. #5, Ex. 8; *Priest*, 2007 WL 3293403 at ¶34. Upon review of the pertinent authority, Ohio Crim R. 16(B)(1)(g), *Jenkins*, and *Spraggins*, the undersigned fails to see how the trial court and the appellate court determined that Officer Bechtel's report did not constitute a witness statement without conducting an in camera inspection. While it is true that federal district courts do not generally sit as a further Court of Appeals to review interpretations of state law, the district court must nevertheless determine whether an egregious error of state law has occurred to determine if Petitioner's due process rights have been violated. *See Donnelly v. Christoforo*, 416 U.S. 637, 642 (1974) (holding that habeas review was limited to the narrow issue of due process); *McAdoo,* 365 F.3d at 494. In conducting that review, the undersigned is "convinced that the highest state court would decide differently." *See Olsen*, 843 F.2d at 929.

Ohio Criminal Rule 16(B)(1)(g)  pertains only to witness statements:

> Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of ***the witness' written or recorded statement*** with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

Ohio Crim. R. 16(B)(1)(g) (emphasis added). The Supreme Court of Ohio has held that police

---

[1]    The Ohio Court of Appeals provided the incorrect citation for *Spraggins*, the citation is 2006-Ohio- 5739, or 2006 WL 3095736.

reports are discoverable in Ohio as a witness' written statement to the extent that the report reflects an officer's personal observations. *See Jenkins,* 473 N.E.2d at 315-16. The *Jenkins* court stated:

> **Clearly, a signed written statement of a state witness would serve the purpose of Crim.R. 16(B)(1)(g) and fall within the plain meaning of the word "statement," just as would a recording of the witness' words or a transcription thereof. We see no reason why the mere fact that the document was a report of a police officer would automatically bar its disclosure.** When it is doubtful whether any discoverable statement exists, the court, on motion of the defendant, shall conduct a hearing on the issue of disclosure held in camera with both attorneys present and participating. *State v. Daniels* (1982), 1 Ohio St.3d 69, 437 N.E.2d 1186. *See, also, Palermo v. United States* (1959), 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287; *Fortenberry v. State* (1975), 55 Ala.App. 1, 312 So.2d 573; *State v. Johnson* (1978), 62 Ohio App.2d 31, 403 N.E.2d 1003 [16 O.O.3d 74].
>
> This is not to say that all portions of a police report are discoverable under Crim.R. 16(B)(1)(g). Reading this section in pari materia with Crim.R. 16(B)(2), it becomes apparent that those portions of a testifying police officer's signed report concerning his observations and recollection of the events are "statements" within the meaning of Crim.R. 16(B)(1)(g). **Those portions which recite matters beyond the witness' personal observations, such as notes regarding another witness' statement or the officer's investigative decisions, interpretations and interpolations, are privileged and excluded from discovery under Crim.R. 16(B)(2).** Cf. *State v. Houston* (Iowa 1973), 209 N.W.2d 42, 46. **Hence, once it is determined that a report in which a producible out-of-court statement of the witness being examined exists, the trial court, on motion of the defendant, must afford attorneys for all parties the opportunity to inspect the "statement" portions personally.** *State v. Daniels, supra,* 1 Ohio St.3d at 70-71, 437 N.E.2d 1186.

*Jenkins,* 473 N.E.2d at 315-16 (footnote omitted) (emphasis added). Since the *Jenkins* court drew a distinction between an officer's personal observations and information gained from other sources, it appears that an in camera inspection of the report must be conducted to determine to what extent, if any, the report reflects an officer's personal observations.

On direct examination, Officer Bechtel unequivocally testified that he had made personal observations upon arriving at the scene. *See* Tr. at 279-303. For example, Officer Bechtel stated that as follows:

Q:     When you arrived at that area of Shaw and Allegheny, **what did you *see*?**

A:     At that time **we *saw* a white female**, she flagged us down waving her arms.

                        *          *          *

Q:     When you encountered Ms. Cander, what was her demeanor?

A:     She was upset, hysterical, talking very fast.  . . .

-20-

*       *       *

Q: Let me stop you there.  From where you were standing and she pointed in the direction down the street, **could you** *see* **whoever she was pointing to or anyone else?**

A: Yes.  There was a small crowd, there was probably three of four people approximately five, 600 feet down the street.

Tr. at 283 -85 (emphasis added).  The foregoing testimony is just a sample of the testimony Officer Bechtel proffered which included direct personal observations.  On cross-examination, defense counsel asked specifically for a report reflective of Officer Bechtel's personal observations:

Q: And I think you indicated that you prepared a report relative to **your observations** that evening –

Tr. at 304 (emphasis added).  Because Officer Bechtel unequivocally testified to his personal observations and because defense counsel specifically requested a report reflective of those personal observations, the undersigned believes that the trial court erred as a matter of state law in finding that Officer Bechtel's report was not a witness statement simply because he was not a witness to the crime.  *See* Tr. at 305 ( The court: "Because he did not witness the crime, it is not a witness statement and, therefore, cannot be used by the defense.").  Officer Bechtel witnessed other probative evidence besides the actual commission of the crime; that is partly why the State called him as a witness and why he testified regarding personal observations.

The *Jenkins* case itself acknowledges that police officers who do not directly witness a criminal act may make observations that invoke the court's duty to perform an in camera inspection pursuant to Ohio Rule of Criminal Procedure 16(B)(1)(g).  The officers in *Jenkins*, like Officer Bechtel, did not observe the crime occur but testified to their personal observations following their arrival at the crime scene.  *Jenkins*, 473 N.E.2d at 314.  Although, the undersigned notes that the Supreme Court  of Ohio did not compel production of the police report in *Jenkins* because: "At the time of the officers' examination, appellant knew that an in camera inspection had not been conducted and should have objected at that time, or otherwise moved the court to conduct such an inspection if he believed it was necessary to do so. In a situation such as this a defendant cannot be heard to complain on appeal about a matter which the trial judge could have remedied if the defense

had complained then." *Jenkins*, 473 N.E.2d at 226.  That is clearly not the case here.  Defense counsel moved for an in camera inspection, moved to preserve the report for appeal, and pursued the purported error on appeal.  Tr. at 304-07; 495-96; ECF Dkt. #5, Ex. 6 at 19-20, Ex. 10 at 9-11.

Further, the Ohio Court of Appeals in the instant case cited *Spraggins* for the proposition that "Reports or notes taken by a police officer during an interview with a victim or witness in a case are not considered a statement for the purposes of Crim.R. 16(B)(1)(g)."  ECF Dkt. #5, Ex. 8; *Priest*, 2007 WL 3293403 at ¶34.  The undersigned again fails to see support for the court's conclusion because the *Spraggins* holding was placed in a broader context:

> {¶ 15}  In the first assigned error, Spraggins argues the trial court erred in not conducting an in camera review of the lead detective's observations and in failing to impound and preserve the report for appellate review. We agree.
>
> {¶ 16}  A defendant is entitled to a Crim.R. 16(B)(1)(g) in camera inspection of a witness' prior written or recorded statement if it is requested after the direct examination of that witness, but before the completion of cross-examination. However, reports or notes taken by a police officer during an interview with a victim or witness in a case are not considered a statement for the purposes of Crim.R. 16(B)(1)(g). Police reports may be considered statements in this context only where the document contains the author's own observations and recollection of the events. If evidence is not generally discoverable under Crim.R. 16(B)(2), it will not be available for use under Crim.R. 16(B)(1)(g); for example, those portions of a police report which contain officers' notes regarding witnesses' statements, officers' investigative decisions, interpretations and interpolations are excluded from discovery under Crim.R. 16(B)(2).

*Spraggins*, 2006 WL 3095736 at ¶¶15-16 (footnotes omitted).  In fact, the *Spraggins* court found an error in the trial court's failure to conduct an in camera inspection and granted a new trial based upon the trial court's failure to preserve the police report for appeal.  *Id*. at ¶¶ 15, 17-20.

For some reason, the Court of Appeals in Petitioner's case restricted its review of *Spraggins* to police reports pertaining to *witness statements*.  However, trial counsel explicitly sought a police report "relative to [Officer Bechtel's] *observations* that evening" and appellate counsel also explicitly sought review based upon the trial court's failure "to conduct an in-camera inspection of the *officer's observations*."  Tr. at 304 (emphasis added); *Priest*, 2007 WL 3293403 at  ¶32 (emphasis added).  The Court of Appeals' reliance on *Spraggins* is misplaced because, like the court in *Spraggins*, the state courts should have undertaken a complete analysis of the police report and not presumed that the entire report contained only witness statements.  The Court of Appeals concluded that "the report

-22-

was an investigative report and not a witness statement. As such, Crim.R. 16(B)(1)(g) is not applicable." *Priest*, 2007 WL 3293403 at ¶32.  The trial record establishes that the trial court did not review the report in camera and there is no indication in the appellate court's opinion that it reviewed Officer Bechtel's report in camera.  The undersigned fails to see how either court could conclude that Officer Bechtel's report was an investigative report and not a witness statement without conducting an in camera inspection.  Again, under the Supreme Court of Ohio's rule in *Jenkins*, if there is any doubt as to whether a police report contains personal observations, a court *must* conduct an in camera inspection.  *Jenkins,* 473 N.E.2d at 315-16.  That was not done in the instant case and such an error would normally be reversible at the state-court level, as *Spraggins* demonstrates.  Therefore, the undersigned is convinced that the Supreme Court of Ohio would have decided the instant case differently had it accepted jurisdiction.

As previously stated, however, a showing of a state court evidentiary error alone is insufficient to merit habeas relief.  The trial court's failure to conduct an in camera inspection cannot alone justify habeas relief.  Petitioner must also establish resulting prejudice.  *McAdoo,* 365 F.3d at 494.  In this case, the Court will not be able to determine if the trial court's error was prejudicial because Officer Bechtel's report has not been presented to the Court.  This evidentiary shortcoming is not Petitioner's fault and should not be held against him because his attorney sought an in camera inspection at trial and moved the court to preserve and seal the report for the appellate record.  Tr. at 304-07; 495-96.  Further, Petitioner pursued the issue on appeal.  ECF Dkt. #5, Ex. 6 at 19-20, Ex. 10 at 9-11.  Any inability to establish prejudice is not Petitioner's fault.  Rather, it is the result of the trial court's error in failing to conduct an in camera inspection.

Accordingly, the undersigned recommends that the Court compel the State to produce Officer Bechtel's report to determine if the trial court's error resulted in an error so egregious as to deem Petitioner's trial fundamentally unfair and to deprive him of due process.  *See, e.g.*, *Schoenberger v. Russell,* 290 F.3d 831, 835,  (6th Cir. 2002):

> Although petitioner raised a claim that admission of this testimony violated both due process and his right to a fair trial, the Ohio court of appeals did not directly address these constitutional issues. In the absence of a state court decision, we conduct an independent review of federal law to determine if the state court either contravened or unreasonably applied clearly established federal law. *Harris v. Stovall*, 212 F.3d

-23-

940, 943 (6th Cir.2000). "That independent review, however, is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.* (footnote omitted). Accordingly, under the deferential standards articulated above, the question we address is whether the state court's failure to find plain error violated petitioner's constitutional rights.

In this case, it is possible that the trial court's error resulted in Petitioner being denied the right confront adverse witnesses as provided in the Sixth and Fourteenth Amendment in the United States Constitution.  The undersigned believes that the Court cannot make that determination without conducting an in camera inspection because "by evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt."  *Holmes v. South Carolina*, 547 U.S. 319, 331.[2]  Upon an in camera inspection, the court can determine if Officer Bechtel's report is critical to the case and tends to exculpate Petitioner.  *See Turpin*, 26 F.3d at 1396.  If Officer Bechtel's report reveals *material* inconsistencies that amount to a due process violation by establishing the Petitioner was denied a fair trial, then the undersigned recommends that the Court grant Ground Two of the instant petition.  Otherwise, the undersigned recommends that the Court dismiss Ground Two with prejudice.

As a final matter, the undersigned notes that trial counsel initially sought the report based on Ohio Rule of Evidence 613(A).  Tr. at 306.  The undersigned also notes that Respondent has not raised any waiver argument pertaining to trial counsel and the fact that he did not explicitly rely on Ohio Rule of Criminal Procedure 16(B)(1)(g).  *See* ECF Dkt. #5 at 9-12, 25- 26.  Further, Respondent specifically contends that the trial court based its ruling on Ohio Rule of Criminal Procedure 16(B)(2).  ECF Dkt. #5 at 10. Lastly, Respondent does not raise a procedural default defense related to Ground Two (*i.e.*, that Petitioner failed to fairly present his constitutional claims to the state courts).  *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) ("Getsy failed to raise this claim before the state court, but the Warden has not raised the issue of procedural default and has thereby waived it."); *Slagle v. Bagley*, 457 F.3d 501, 514-15 (6th Cir. 2006).  Therefore, the

---

[2]  Again, the undersigned notes that the lack of evidence establishing prejudice cannot be attributed to Petitioner's fault since his counsel did move to preserve Officer Bechtel's report and pursued the issue on appeal.

Court should reject any argument that Respondent may offer regarding Ground Two being waived.

### C.        Ground Three: Ineffective Assistance of Counsel

Petitioner next claims that his trial counsel was ineffective for failing to object to prior bad acts testimony and victim impact testimony.  ECF Dkt. #1 at 9, Attach. 1, 13-16.  Specifically, Petitioner contends that counsel should have objected to: (1) testimony from a witness that he had seen Petitioner shoot a gun on a previous occasion and that he saw him place a gun in the trunk of his car; and (2) testimony from one victim that she is scared and cannot sleep at night and testimony from another victim that she cannot trust males.  ECF Dkt. #1, Attach. 1 at 16-17.

Respondent contends that Petitioner's claim of ineffective assistance of counsel is not cognizable because the underlying claimed evidentiary errors are not cognizable.  ECF Dkt. #5 at 13.  Respondent's argument lacks merit because the requirement for counsel's effective assistance is not limited to matters of federal constitutional law.  Respondent has cited no authority for the proposition that an ineffective assistance of counsel claim must be based upon trial counsel's deficient performance related to a federal constitutional law issue.  Indeed, it is well-established that counsel's competence must extend to matters of state criminal law for the Sixth Amendment protection to have significance.  As the Supreme Court acknowledged that the Sixth Amendment requires competence in matters of state law, specifically evidentiary law:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. **If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. *He is unfamiliar with the rules of evidence.* Left without the aid of counsel he may be put on trial without a proper charge, and *convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible.*** He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. **He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.**

*Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963) (emphasis added).

In the instant case, Petitioner's claims are not stand-alone claims of state evidentiary law errors.  They are instead claims that the he was denied the constitutional right to the assistance of counsel based upon underlying purported state evidentiary law errors.  *See* ECF Dkt. #1 at 13 ("Appellant received the ineffective assistance of counsel guaranteed by . . . the Sixth and Fourteenth

Amendment [sic] to the United states Constitution when his attorney failed to object to unfairly prejudicial evidence and failed to object to improper victim impact testimony.").  In fact, Petitioner cites *Strickland v. Washington*, 466 U.S. 668 (1984) in support of his claim.  *Id.* at 14.

Respondent relies on *Bey* for the proposition that Petitioner's claim is not cognizable.  ECF Dkt. #5 at 13.  Respondent's reliance on *Bey* is misplaced because the *Bey* court stated that a stand-alone claim of a state court evidentiary error was not cognizable, but a claim that an evidentiary error resulted in a constitutional violation *was* cognizable.  *Bey*, 500 F.3d at 519-520.  Here, Petitioner's primary claim is *not* a state court evidentiary error; it is a claim of ineffective assistance of counsel based upon failure to object to evidence.  As discussed above, the undersigned is not aware of any requirement that an ineffective assistance of counsel claim be based upon trial counsel's deficient performance related to a federal constitutional law issue.  Therefore, the undersigned recommends that the Court reject Respondent's non-cognizability argument related to Ground Three.

The undersigned recommends that the Court proceed to address the merits of Ground Three. In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984).  To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Court scrutiny of defense counsel review must be "highly deferential." *Id.* at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel.  *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).   Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief.  *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith*

*v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

Here, the Ohio Court of Appeals held that Petitioner had failed to establish underlying evidentiary errors:

> {¶ 37} Defendant's fourth assignment of error states:

> {¶ 38} "Appellant received ineffective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when his attorney failed to object to improper victim impact testimony."

> {¶ 39} Within this assignment of error, defendant complains that his trial counsel was ineffective for failing to object to "prior bad acts" evidence linking him to a weapon, and to victim impact evidence.

> {¶ 40} We do not accept the contention that this evidence concerned "prior bad acts." Rather, the testimony indicated that defendant possessed a silver .25 caliber semi-automatic handgun, and this was probative of the allegations that the rapist had a silver gun.

> {¶ 41} As to the victim impact contention, we note that courts generally exclude this evidence because it is irrelevant and immaterial to the guilt or innocence of the accused and mainly serves to inflame the passion of the trier of fact. *See State v. White* (1968), 15 Ohio St.2d 146, 151, 239 N.E.2d 65. However, victims may testify as to how a crime has impacted their lives, particularly when the "circumstances of the victims are relevant to the crime as a whole." *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, citing *State v. Lorraine* (1993), 66 Ohio St.3d 414, 420, 613 N.E.2d 212.

> {¶ 42} In this matter, we conclude that the testimony at issue focuses upon the manner in which the offenses have impacted the lives of the victims and was relevant to the offenses as a whole. Cf. *State v. Eads*, Cuyahoga App. No. 87636, 2007-Ohio-539 ("Just as the victim of a felonious assault may testify to the treatment needed as a result of the assault in order to prove that the assault actually did occur, so may the victim of a sexual assault testify to the lingering trauma suffered as a result of that abuse."). In any event, we find no prejudicial error in light of the great weight of the evidence against defendant.

*Priest*, 2007 WL 3293403 at ¶¶ 37-42. Typically, a habeas court reviews the state court's ruling for an unreasonable application of federal law. In a case such as this, Petitioner, would have to show not only that trial counsel's strategy was unreasonable, but that the state appellate court's finding that his strategy was not unreasonable was itself unreasonable. 28 U.S.C. § 2254(d); *see Mooney v. Trombley,* 2007 WL 2331881 at *21 (E.D.Mich., Aug. 13, 2007), unreported.

-27-

Petitioner has failed to establish that the state appellate court's ruling was unreasonable. Ohio Rule of Evidence 404(B) provides:

> **Other crimes, wrongs or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ohio R. Evid. 404(B).  As the Ohio Court of Appeals held, testimony at trial indicated that the perpetrator was carrying a silver .25 caliber semi-automatic handgun.  Therefore, the court held that testimony pertaining to Petitioner's prior possession of a handgun was admissible under Ohio law for the purpose of establishing his identity as the perpetrator and not to show that he had acted in conformity with a prior "bad act."

As Respondent notes, testimony at trial indicated that the perpetrator possessed a small silver gun. Tr. at 470, 673.  Further, the alleged "prior bad acts testimony" from Brandon Wheat was admitted to show that Petitioner possessed a small silver-barreled .25-caliber handgun about a day or two before the crimes were committed.  *See* Tr. at 406, 415.  Therefore, there is no basis for concluding that the Ohio courts erred in admitting the testimony regarding the silver gun, and there is consequently no basis for concluding that the Ohio appellate court's application of federal law was unreasonable in holding the trial counsel was not ineffective for his alleged failure to object to evidence pertaining to the gun.

Turning to victim impact testimony, the undersigned again notes that the Ohio Court of Appeals held that Ohio law permits victim impact testimony to prove that the rapes actually did occur.  Further, the appellate court considered the evidence against Petitioner, weighed against the fleeting comments related to victim impact, and determined that no prejudice resulted.

Petitioner cannot demonstrate deficient performance of counsel or prejudice because the testimony at issue was admissible, as the state courts held in this case.  The Supreme Court of Ohio has held that victim-impact testimony can be admissible in a criminal prosecution. *Lorraine*, 613 N.E.2d at 218-19.  Further, Ohio courts have held that victim impact evidence is probative toward a victim's credibility on her claim of sexual abuse. *See*, *e.g., State v. Wagner*, Case No. 03 CA 82, 2004 WL 1672200 at ¶55 (Ohio App. 5 Dist. July 26, 2004) ("The victims were permitted to testify

-28-

regarding how appellant's abuse impacted their lives. . . Such testimony helped the jury to determine the credibility of the victims' testimony."); *see also State v. Geboy*, 764 N.E.2d 451, 462 (Ohio App. 3 Dist.,2001) (In a prosecution for rape, evidence that a victim was subsequently treated for an eating disorder and depression was held to be admissible.  Although the testimony was challenged as hearsay, the Ohio Court of Appeals nevertheless held that it was an admissible out of court statement. This holding implies that it the victim impact evidence was also relevant.).  Since the Court must be highly deferential to counsel's tactical decisions at trial and Ohio law demonstrates a clear basis of admissibility, the undersigned recommends that the Court find that Petitioner's claim lacks merit due to a failure to establish deficient performance and prejudice (*i.e.*, a likelihood of success on the objection and a likelihood that it would have affected the ultimate outcome of the trial).

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground Three in its entirety with prejudice.

### D.       Ground Four: Sentencing

Lastly, Petitioner contends that the trial court erred by imposing a sentence that is disproportionate to other similarly situated offenders.  Respondent contends that this claim is waived because it was never fairly presented as a constitutional claim in the state courts.  ECF Dkt. #5 at 16.

The undersigned agrees with Respondent's assertion of waiver, but disagrees with his analysis.  Respondent contends that the failure to raise the constitutional issue in the trial court amounts to a waiver.  However, fair presentation of constitutional claims is generally a matter of exhaustion.  *See Franklin*, 811 F.2d at 325 *Wong*, 142 F.3d at 322; *McMeans*, 228 F.3d at 681, *discussed supra*. Therefore, the undersigned does agree that Petitioner was required to fairly present the constitutional issue to state courts.  However, failure to exhaust state court remedies does not automatically result in waiver of a claim.  The United States Supreme Court stated in *Rose v. Lundy*, 455 U.S. 509, 522 (1982), that "a total exhaustion rule . . . does not unreasonably impair the prisoner's right to relief."  Therefore, failure to exhaust cannot automatically result in waiver. Rather, the district Court should dismiss the petition without prejudice or stay the petition so that the petitioner can pursue state court remedies.  *See Rhines v. Weber*, 544 U.S. 269 at 277-78 (2005).

-29-

An important exception applies to the foregoing rule, however. If a petitioner fails to fairly present a ground for relief to all appropriate state courts levels which bars review of the merits of the claims by the state's highest court, and "no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, his claims for habeas corpus relief are subject to dismissal with prejudice on the ground that they are waived." *Oliver v. Moore,* 2005 WL 1793844, *4 (S.D.Ohio 2005), citing *O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir.1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir.1989).

Here, Petitioner raised only state constitutional claims pertaining to Ground Four on direct appeal. *See* ECF Dkt. #5, Ex.6 at 33, 10 at 15. On direct appeal, Petitioner principally relied upon *State v. Comer,*793 N.E.2d 473 (Ohio 2003), where the Supreme Court of Ohio considered the appropriateness of non-consecutive sentences and non-minimum sentences under O.R.C. §§ 2929.11 and 2929.14. The *Comer* case did not employ analysis of federal constitutional law. *See Clinkscale*, 375 F.3d at 437, *element* (2) *discussed supra*. Further, Petitioner never cited any federal cases. *Id*, *element* (1). Petitioner did not specifically phrase his claim in terms sufficiently particular to allege the denial of a specific constitutional right. *Id*; *Blackmon v. Booker*, 394 F.3d 399, 400-401 (6th Cir. 2004). Further, Petitioner has not alleged facts that are obviously within the mainstream of constitutional law. *See Clinkscale*, 375 F.3d at 437, *element* (4) *discussed supra*

Because Petitioner's failed to raise a *federal* constitutional claim at trial and on direct appeal, the instant Eight and Fourteenth Amendment claims would be barred by res judicata. *See Christian v. Williams*, Case No. 4:08CV1953, (N.D. Ohio July 24, 2009) (adopting report and recommendation, which reads ("Here, remanding Petitioner's claims would be an exercise in futility because they would be barred under Ohio's res judicata rule.") (ECF Dkt. #19 at 16); *see also Coleman v. Mitchell*, 268 F.3d 417, 427, (6th Cir. 2001); *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967).[3] Accordingly, the Court should consider Ground Four to have been waived due to res judicata

---

[3]      "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that

and dismiss it with prejudice.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS Grounds One, Three, and Four of the instant petition with prejudice.  The undersigned further RECOMMENDS that the Court order the State to produce Officer Bechtel's police report for an in camera inspection by the Court, in order to adjudicate the merits of Ground Two.


DATE: August 5, 2009                          *s/ George J. Limbert*
                                               GEORGE J. LIMBERT
                                               UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment."

-31-